UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60831-CIV-DAMIAN

NATHAN VIDAL and EDUARDO
GRANADOS, on behalf of themselves
and all other similarly situated individuals,

    Plaintiffs,
v.

THE HERSHEY COMPANY,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS [ECF NO. 24]

**THIS CAUSE** is before the Court upon Defendant, The Hershey Company's, Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) & 12(b)(6) and 12(f) [ECF No. 24 ("Motion")], filed September 4, 2024.

THE COURT has reviewed the Motion to Dismiss and the parties' briefing, the applicable law, and the relevant portions of the record and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is due to be granted.

### I.  BACKGROUND

#### A. *Factual Allegations*[1]

Plaintiffs, Nathan Vidal, Debra Hennick, Abdjul Martin, and Eduardo Granados (collectively, "Plaintiffs"), initiated this class action against Defendant, The Hershey

---

[1] At this stage, the Court accepts the well-pled allegations in the Complaint as true and construes them in the light most favorable to Plaintiffs. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Company ("Hershey" or "Defendant"), claiming they were misled by the packaging of certain Hershey's products. *See generally* ECF No. 1 ("Compl."). That is, Plaintiffs claim they bought chocolate products they thought included cool, carved designs but were disappointed when the products did not include those designs, and, therefore, in their view, were not so cool.

As alleged in the Complaint, Hershey manufactures, markets, and distributes Reese's Peanut Butter products,[2] including the Reese's Peanut Butter Pumpkins pictured below:



Compl. ¶¶ 7, 49–51.

On October 29, 2023, Plaintiff Nathan Vidal, while shopping at a Publix grocery store, saw the Reese's Peanut Butter Pumpkins for sale and "believed that the product contained a cool looking carving of a pumpkin's mouth and eyes as pictured on the product packaging." *Id.* ¶ 28. Mr. Vidal alleges that, based on the depictions on the product packaging, he purchased three bags of Reese's Peanut Butter Pumpkins and a bag of Reese's White Pumpkins for approximately $8 each. *Id.* ¶ 29. Mr. Vidal complains that the Reese's Peanut

---

[2] These include Reese's Medal, Reese's Peanut Butter Pumpkins, Reese's White Pumpkins, Reese's Pieces Pumpkins, Reese's Peanut Butter Ghost, Reese's White Ghost, Reese's Peanut Butter Bats, Reese's Peanut Butter Footballs, and Reese's Peanut Butter Shapes Assortment Snowmen Stocking Bells (collectively, the "Reese's Products"). Compl. ¶ 2.

Butter Pumpkins and Reese's White Pumpkins he purchased "did not contain any of the artistic carvings of the mouth or eyes as pictured on the label and they were all blank," as pictured below:



*Id.* ¶¶ 8, 30. Mr. Vidal claims that he "was very disappointed and would not have purchased the Reese's Peanut Butter Pumpkins and Reese's White Pumpkins products if he knew that they did not have the detailed carvings of the mouth and/or eyes as pictured on the products' packaging." *Id.* ¶ 31.

Similarly, Plaintiff Eduardo Granados alleges that, on November 2, 2023, while shopping at a Publix grocery store, he "saw the Reese's Peanut Butter Pumpkins for sale and believed that the product contained a cool looking carving of a pumpkin's mouth and eyes as pictured on the product packaging." *Id.* ¶ 40. Relying on the depictions on the product packaging, Mr. Granados purchased a bag of Reese's Peanut Butter Pumpkins for $2.65. *Id.* ¶ 41. Mr. Granados alleges the product he purchased "did not contain any of the artistic carvings of the mouth or eyes as pictured on the label and they were all blank." *Id.* ¶ 42. Mr. Granados claims that he "was very disappointed and would not have purchased the Reese's

Peanut Butter Pumpkins product if he knew that it did not have the detailed carvings of the mouth and/or eyes as pictured on the product packaging." *Id.* ¶ 43.

### B. Procedural History

On May 17, 2024, Plaintiffs filed a Class Action Complaint on behalf of themselves and a proposed class of consumers who purchased one of the Reese's Products in the State of Florida, alleging a single cause of action for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq. See generally* Compl. Specifically, Plaintiffs allege that they and numerous other consumers purchased the Reese's Products "with the reasonable expectation that the Products would look similar to the pictures displayed on the Products' packaging." *Id.* ¶ 81. According to Plaintiffs' allegations, Hershey "has deceived reasonable consumers, like Plaintiffs and members of the Class, into believing the Products were something that they were not." *Id.* ¶ 83. Plaintiffs further allege that they and members of the purported Class "suffered damages amounting to, at a minimum, the price that they paid for the Products." *Id.* ¶ 84. In the Complaint, Plaintiffs seek both damages and injunctive relief. *Id.* ¶ 87.

On September 4, 2024, Hershey filed the Motion to Dismiss now before the Court pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f). [ECF No. 24 ("Motion")]. On September 18, 2024, Plaintiffs filed a Response to Motion to Dismiss [ECF No. 26 ("Response")], and on September 25, 2024, Hershey filed a Reply [ECF No. 27 ("Reply")]. The Motion to Dismiss is fully briefed and ripe for adjudication, and this Court addresses it below.

4

On February 21, 2025, Plaintiffs filed a Motion for Class Certification asserting they have satisfied all the requirements of Rule 23(a) to certify a class of consumers who purchased a Reese's Peanut Butter product based on a false and deceptive representation of an artistic carving on the product packaging. [ECF No. 31 ("Motion for Class Certification")]. On April 4, 2025, Hershey filed a Response to the Motion for Class Certification [ECF No. 43], and, on April 11, 2025, Plaintiffs filed their Reply. [ECF No. 44].

While the above Motions were pending, on March 10, 2025, two of the four Plaintiffs, Debra Hennick and Abdjul Martin, voluntarily dismissed their claims against Hershey in this action (*see* ECF No. 40), and, therefore, Plaintiffs Nathan Vidal and Eduardo Granados are the only remaining named Plaintiffs.

On May 14, 2025, the parties also filed a Joint Motion to Stay pending resolution of Defendant's Motion to Dismiss and Plaintiffs' Motion for Class Certification. [ECF No. 46 ("Motion to Stay")].

All of the above-referenced Motions are pending.

## II. HERSHEY'S MOTION TO DISMISS

In the Motion to Dismiss, Hershey argues that Plaintiffs lack standing because they suffered no injury-in-fact. Mot. at 7. According to Hershey, the only injury alleged by Plaintiffs is an economic injury, but the Plaintiffs here did not suffer an economic injury because they were not deprived of the benefit of their bargain where they did ultimately receive "delicious Reese's candy." *Id*. Hershey also argues that the FDUTPA claim fails because no reasonable consumer would be deceived when viewing the full context of the Reese's Products' packaging, which included both carved and uncarved images and

5

"DECORATING SUGGESTION" disclaimers on most of the products. *Id.* at 9–14. Additionally, Hershey points out that none of the packaging images included in Plaintiffs' Complaint matches the actual packaging of the products they claim to have purchased. *Id.* at 9. And Hershey contends the FDUTPA claim must also fail because it does not satisfy the heightened pleading requirements of Rule 9(b) and does not plead facts to establish Plaintiffs sustained "actual damages." *Id.* at 13–14. Alternatively, Hershey argues that if the entire Complaint is not dismissed, parts of it should be dismissed or stricken because Plaintiffs cannot assert claims based on products they did not purchase, the class allegations are deficient and warrant striking, and the claims for injunctive relief cannot survive where Plaintiffs have not alleged a threat of future harm from the alleged deceptive conduct. *Id.* at 14-19.

In response, Plaintiffs contend that whether the packaging is misleading is a factual question for the jury and refer to YouTube videos and other consumer complaints as evidence of actual consumer deception. Resp. at 3–5; Compl. ¶¶ 16–22. Plaintiffs claim they have suffered an injury-in-fact because they purchased the Reese's Products specifically for the cool artistic carvings, making the products "worthless" without them. *Id.* at 6. They also argue that the "DECORATING SUGGESTION" disclaimer was inadequately disclosed in tiny print on the packaging. *Id.* at 5. Plaintiffs also argue that Rule 9(b)'s heightened pleading standard does not apply to their FDUTPA claim, that it is premature to address the class allegations in the Complaint, and that they can pursue claims based on products the named Plaintiffs did not actually purchase. *Id.* at 8–13. And Plaintiffs indicate they do not intend to pursue any claims for injunctive relief. *Id.* at n. 2.

6

In its Reply, Hershey reiterates its arguments that Plaintiffs received the benefit of their bargain – edible candy – and that their selective focus on the carved images while ignoring the disclaimers and uncarved images on the same packaging was unreasonable. Reply at 1, 6–7. Hershey also points out that some packages show partially eaten candy, which no reasonable consumer would expect to receive in a package of new candy. *Id.* at 4, 7. Hershey maintains that Rule 9(b) does apply to the FDUTPA claim and that Plaintiffs have not pled actual damages, and Hershey argues that the authority relied on by Plaintiffs in support of their ability to pursue claims based on products they did not purchase is inapposite. *See* Reply, generally. Hershey further contends that Plaintiffs' request for leave to amend is improper and should be denied. *Id*. at 10.

This Court addresses the Motion and the parties' arguments below.

### III.   LEGAL STANDARDS

#### A.  *Rule 12(b)(1) – Lack of Standing*

Under Article III of the United States Constitution, federal courts may only decide "Cases" and "Controversies." U.S. Const. art. III, § 2. One element of the case-or-controversy requirement is that plaintiffs "must establish that they have standing to sue" in federal court. *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must allege that: (1) he or she has suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely

7

speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003) (citations omitted).

"[T]he party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)).

### B. Rule 12(b)(6) – Failure To State A Claim

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim

8

for relief that is plausible on its face." *Id.* at 570. A plaintiff makes a facially plausible claim when she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted. In considering a Rule 12(b)(6) motion, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73).

## IV. DISCUSSION

As noted above, Hershey argues that the Complaint should be dismissed in its entirety because Plaintiffs lack standing. Mot. at 8. In the alternative, Hershey seeks to the dismiss the Complaint for failure to state a claim and failure to plead with the requisite particularity

required under Rule 9(b). *Id.* Hershey also seeks to dismiss or to strike the Complaint's class action allegations. *Id.*

Because the issue of standing "is a threshold jurisdictional question[,]" this Court first addresses the parties' argument as to Article III standing. *Walters v. Fact AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023). In the Motion, Hershey argues that the Complaint should be dismissed in its entirety because Plaintiffs lack standing to pursue either damages or injunctive relief. Since "standing is not dispensed in gross[,]" and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)[,]" this Court typically addresses standing as to each form of relief Plaintiffs seek. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). However, here, Plaintiffs have indicated they no longer intend to seek injunctive relief. Therefore, this Court need only address the standing issue in connection with Plaintiffs' damages claims.

Before turning to the standing inquiry, this Court also observes that in light of the dismissal of all but two of the named Plaintiffs, the parties' arguments, raised before those other Plaintiffs were dismissed, will be analyzed in the context of the two remaining named Plaintiffs only.

### A. Standing.

In the Complaint, Plaintiffs allege that they have been aggrieved by Hershey's false and misleading advertising because "they purchased the Products with the reasonable expectation that the Products would look similar to the pictures displayed on the Products' packaging." Compl. ¶ 81. Plaintiffs claim they would not have purchased the Reese's Products, specifically as to the remaining Plaintiffs, the Reese's Peanut Butter Pumpkins and

10

Reese's White Pumpkins, if they "knew that [these Reese's Products] did not have the detailed carvings of the mouth and/or eyes as pictured on the product packaging." *Id.* ¶¶ 31, 43. Plaintiffs further allege that they "suffered damages amounting to, at a minimum, the price they paid for the Products." *Id.* ¶ 84.

Hershey argues that Plaintiffs fail to plausibly plead a concrete injury and therefore lack Article III standing to pursue their claims. Although Hershey acknowledges that Plaintiffs allege an economic injury in the Complaint, Hershey argues that Plaintiffs have not pled an actual concrete economic injury because they were not denied the benefit of their bargain for the specific products they purchased. Mot. at 13. In other words, Plaintiffs paid for a consumable good and, in return, they received a delicious, edible Reese's Product. *Id.* at 14. Hershey points out that Plaintiffs do not allege that the Reese's Products they purchased were defective, inedible, or did not meet taste/flavor expectations, nor do Plaintiffs allege that the Reese's Products altogether lost their economic value because of the absence of the decorative carvings. *Id.*

Plaintiffs argue they have sustained an injury in fact because they allege that they would not have purchased the Reese's Products if they had known that they did not have the detailed carvings as pictured on the packaging. Resp. at 11. According to Plaintiffs, the products they purchased were "worthless" due to the lack of decorative carvings. *Id.* Plaintiffs also argue that "[t]he value of a blank chocolate candy is going to be less than the value of the same chocolate candy adorned with detailed artistic carvings . . . ." *Id.* Notably, Plaintiffs cite no case law in their Response to support their argument that such allegations are sufficient to confer Article III standing.

11

Hershey replies that Plaintiffs' "subjective feelings of disappointment do not constitute an economic injury sufficient to confer standing." Reply at 5. Hershey also points out that Plaintiffs' argument in their Response that they sustained an economic injury based on a diminution-in-value damages theory is not actually alleged in the Complaint and cannot be pled in response to a motion to dismiss. *Id.* at 6.

For purposes of Article III standing, the Eleventh Circuit has emphasized that "[e]conomic injuries are the 'epitome' of concrete injuries." *Doss v. General Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (citing *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019)). "A person experiences an economic injury when, as a result of a deceptive act or an unfair practice, she is deprived of the benefit of her bargain." *Doss*, 816 F. App'x at 314 (citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016)). "Ordinarily, when a plaintiff purchases a product with a defect, the product retains some value, meaning her benefit-of-the-bargain damages are less than the entire purchase price of the product." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019). One exception to this general rule applies when the "product is rendered valueless as a result of a defect." *Id.* (quotation marks omitted).

Applying these principles, various courts have found that a plaintiff sufficiently pled an injury in fact for purposes of Article III standing based on allegations that he or she would not have bought a product, or would have paid less for it, if not for its allegedly deceptive label. *See, e.g.*, *Valiente v. Unilever United States, Inc.*, No. 22-21507-CIV, 2022 WL 18587887 at *5–6 (S.D. Fla. Dec. 8, 2022) (Lenard, J.) ("Plaintiff suffered an actual monetary injury by paying a price premium due to the Product's allegedly deceptive label.") (collecting cases).

12

However, other courts, including courts in this District, have reached the oppositive conclusion on similar facts. *See, e.g.*, *Doss v. General Mills, Inc.*, No. 18-61924-Civ-Scola, 2019 WL 7946028, at *2–3 (S.D. Fla. June 14, 2019) (Scola, J.) (dismissing complaint for lack of Article III standing where plaintiff "argue[d], without any meaningful analysis, that she ha[d] sufficiently alleged an 'economic injury' because she would not have bought" the product but for the seller's deceptive practices in failing to disclose that they potentially contained a harmful substance), *aff'd*, 816 F. App'x 312 (11th Cir. 2020). These latter two cases from this District in which courts found that plaintiffs lacked standing based on similar allegations as those presented here are instructive.

In *Valiente v. Publix Super Markets, Inc.*, the plaintiff purchased honey-lemon cough drops, apparently attracted by the phrase "honey-lemon," the "pictures of these ingredients," and the statement that the product "soothes sore throats." No. 22-22930-Civ-Scola, 2023 WL 3620538, at *1 (S.D. Fla. May 24, 2023) (Scola, J.). Based on those representations, the plaintiff believed that the cough drops contained lemon ingredients and were capable of soothing bronchial passages. *Id.* The product's front label, however, disclosed that the active ingredient was "Menthol Cough Suppressant/Oral Anesthetic," and the ingredient list did not include lemon. *Id.* The plaintiff acknowledged that they did use the cough drops, which were not defective or inedible. The court ultimately held that the plaintiff failed to assert an economic injury because the plaintiff did not allege that the "honey-lemon cough drops were defective, did not work as advertised, or otherwise were so flawed as to render them worthless." *Id.* at *5.

Similarly, in *Melancon v. Alpha Prime Supps, LLC*, plaintiffs alleged that they paid a price premium for protein-infused brownies that were advertised by the manufacturer as containing 19 grams of protein per serving but, in fact, contained less than the advertised protein content. No. 24-61135, 2025 WL 375903 (S.D. Fla. Jan. 13, 2025) (Martinez, J.). The district court found that the plaintiffs' allegations that they suffered an economic injury were insufficient to confer Article III standing because the plaintiffs "fail to indicate that the Products are defective, do not work as advertised, or otherwise are so flawed as to render them worthless." 2025 WL 375903, at *1–3. The court also noted that the plaintiffs' allegations that they suffered an injury under a price premium theory was not supported by any factual allegations because they "fail[ed] to identify any competing products, the composition of these unspecified 'competing products,' their prices, or the amount of protein in those products that could allow the Court to plausibly conclude that Plaintiffs suffered a concrete economic injury in fact." *Id.*

As in *Valiente* and *Melancon*, Plaintiffs here fail to allege that the Reese's Products they purchased were defective or worthless. Put simply, Plaintiffs do not allege that the products were unfit for consumption, did not taste as Plaintiffs expected, or otherwise were so flawed as to render them worthless. Rather, Plaintiffs allege that they were "disappointed" that the products they purchased did not have the detailed carvings pictured on the product packaging. Compl. ¶¶ 31, 43. Thus, Plaintiffs' conclusory allegations as to why they have allegedly been deprived of the benefit of their bargain all boil down to their subjective, personal expectations of how the products would or should have looked when unpackaged. This is not enough to plausibly allege a concrete economic injury for purposes of Article III standing. *See, e.g.*,

14

*Austin-Spearman v. AARP*, 119 F. Supp. 3d 1, 13 (D.D.C. 2015) ("But conclusory statements regarding a plaintiff's own beliefs and expectations are not sufficient to support an alleged 'overpayment' injury[.]"). "A plaintiff does not have standing to sue a defendant merely because of his or her buyer's remorse." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 2924, 2023 WL 2817576, at *12 (S.D. Fla. Apr. 6, 2023) (Rosenberg, J.).

Moreover, Plaintiffs' Complaint contains no factual allegations regarding the price they might have paid for the Reese's Products if they had not been marketed with the decorative artistic designs on the packaging. Indeed, there are no allegations by which this Court might measure the difference between the value of the Reese's Products with or without the decorative carvings, much less allegations supporting Plaintiffs' broad, conclusory claim in their Response that products *with* the decorative carvings would potentially be worth more. *See* Resp. at 11. The Complaint contains nothing more than allegations of Plaintiffs' subjective belief that they paid a price premium. However, "mere allegations of having paid a price premium are insufficient – a plaintiff must tie the value of the product to any purported misrepresentation." *Gyani v. lululemon athletica inc.*, No. 24-CV-22651, 2025 WL 548405, at *4–5 (S.D. Fla. Feb. 19, 2025) (Bloom, J.) (dismissing complaint for lack of standing because the plaintiffs' blanket allegations that they paid a price premium fail to tie any aspect of Lululemon's statements to the purported price premium that the plaintiffs paid for Lululemon's products); *see also Valiente*, 2023 WL 3620538, at *5 (finding that to show damages under the price premium theory, a plaintiff needed to demonstrate the hypothetical price at which the product would sell if not for the purportedly misleading advertisements, and a determination of such hypothetical price was too speculative to be an "actual injury"

under Article III); *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1259–60 (S.D. Fla. 2023) (Bloom, J.) (finding that plaintiff failed to demonstrate an injury and lacked standing where the complaint contained no factual allegations of the price she might have paid if the defendant's microwaveable single serve cups of mac and cheese product was not marketed as ready in three and a half minutes).

In short, accepting all of Plaintiffs' claims in the Complaint as true and viewing those allegations in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have failed to allege facts demonstrating a concrete injury. Therefore, this Court finds that Plaintiffs lack Article III standing to assert the claim for relief[3] in the Complaint, either individually or on behalf of a purported class.

### B. Hershey's Other Arguments For Dismissal Of The Complaint.

Because the undersigned has concluded that Plaintiffs do not adequately plead Article III standing, this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex Parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868))). Therefore, this Court does not have jurisdiction to and will not address Hershey's additional grounds for

---

[3] As set forth above, Plaintiffs state that they "do not intend to pursue any claims for injunctive relief." Resp. at 18, n.2. Therefore, Hershey's arguments for dismissal of Plaintiffs' claims for injunctive relief based on a lack of standing is rendered moot, and this Court need not address whether Plaintiffs have standing to seek injunctive relief based on their claim in the Complaint.

dismissal regarding Plaintiffs' failure to state a FDUTPA claim and Hershey's challenges to the class action allegations in the Complaint.

### C. Leave To Amend

In their Response, Plaintiffs request that, in the event the Court dismisses any of Plaintiffs' claims, "the Court do so without prejudice and permit Plaintiffs leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure." Resp. at 13.

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction[.]" *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Syst., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Therefore, the Complaint will be dismissed without prejudice.

However, with respect to the request to permit Plaintiffs leave to file an amended Complaint, Defendant argues "that is not a legally-proper request for leave to amend." Reply at 10. This Court agrees with Defendant.

Leave to amend should be "freely given" absent a showing of "futility of amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, "our precedent is clear that a request for leave to amend embedded in an opposition memorandum does not properly put the issue before the district court." *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1337 (11th Cir. 2024); *see also Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277–78 (11th Cir. 2018) (stating that a request for leave to amend is not properly raised if embedded in a memorandum

17

in opposition to a motion to dismiss and not made by motion). Because Plaintiffs' request for leave to amend is embedded in their Response to the Motion, it is not procedurally proper, and will, therefore be denied. *See Valiente,* 2023 WL 3620538, at *7 (dismissing complaint for lack of standing without prejudice, but without leave to amend, because the request was procedurally defective and lacking in substantive support); *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1261 (S.D. Fla. 2023) (Bloom, J.) (dismissing without leave to amend because the request was not procedurally proper); *Gyani v. lululemon athletica inc.*, 2025 WL 548405 (S.D. Fla. Feb. 19, 2025) (Bloom, J.) (same).

## V. CONCLUSION

Accordingly, based on the foregoing, it is

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss **[ECF No. 24]** is **GRANTED**.
2. The Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE.**
3. In the event Plaintiffs intend to seek leave to file an amended complaint, they must request leave to do so in a properly filed motion in accordance with the applicable Federal and Local Rules within **fifteen (15) days** of the date of the instant Order. After that date, any new pleading must be filed in a new case.
4. The Clerk of Court is directed to **CLOSE** this case.
5. All pending motions, including Plaintiffs' Motion for Class Certification [ECF No. 31] and Joint Motion to Stay [ECF No. 46], are **DENIED AS MOOT**, and any deadlines previously set are **TERMINATED**.

6. Notwithstanding the closure of this case, this Court reserves jurisdiction to address any motion for leave to amend filed in compliance with the foregoing.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 19th day of September, 2025.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Counsel of record