**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-60831-CIV-DAMIAN**

**NATHAN VIDAL and EDUARDO GRANADOS, on behalf of themselves and all other similarly situated individuals,**

Plaintiffs,

v.

**THE HERSHEY COMPANY**,

Defendant.

_______________________________________/

**ORDER GRANTING MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT [ECF NO. 65]**

**THIS CAUSE** is before the Court upon Defendant, The Hershey Company's ("Hershey"), Motion to Dismiss Plaintiffs' First Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f) [ECF No. 65 ("Motion")], filed January 8, 2026.

THE COURT has reviewed the Motion to Dismiss and the parties' briefing, the applicable law, and the relevant portions of the record and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is due to be granted.

## I. INTRODUCTION

Every year, in October, retail stores fill their shelves with all kinds of specialty products shaped like ghosts, cats, bats, and, of course, pumpkins. Specialty chocolates are no exception, and Hershey figures prominently among the purveyors of themed chocolate treats. In particular, during the Halloween season, Hershey manufactures, markets, and distributes Reese's Peanut Butter products in Halloween-themed shapes, including ghosts, bats, and, as relevant here, pumpkins.

Reese's Peanut Butter Pumpkins typically look like the product shown in the below image:



[ECF No. 60 ("Am. Comp.") at ¶ 5]. However, Hershey sells its Reese's Peanut Butter Pumpkins in packaging that displays images like that shown below:




*Id.* ¶¶ 4, 30–31.

The chocolate product depicted on the packaging has on its surface what Plaintiffs describe as "cool and beautiful carved-out designs." Am. Comp. ¶ 3. Although difficult to see in the image shown above, the same packaging also includes a disclaimer, right next to the

pumpkin-shaped treat with the "cool and beautiful carved-out designs," that says, in all capital letters: "DECORATING SUGGESTION." The actual Peanut Butter Pumpkins inside the packaging include no such "cool" designs of carved-out eyes and a mouth, as is evident from the first image shown above and on page 3 of the Amended Complaint. The actual Peanut Butter Pumpkins are, however, shaped like pumpkins, like the product shown on the front of the packaging, and, as such, are more in keeping with the Halloween theme than basic Reese's Peanut Butter Cups sold by Hershey the rest of the year. *See* Am. Comp. ¶ 5.

The instant lawsuit was filed by consumers who allege that they purchased bags of Reese's Peanut Butter Pumpkins based on Hershey's deceptive and misleading marketing that led them to believe that Reese's Peanut Butter Pumpkins would look like the image shown on the front of the packaging. These consumers, Plaintiffs in the instant case, allege that they were aggrieved when they realized that the actual Reese's Peanut Butter Pumpkins they purchased lacked the cool designs shown on the product packaging. *Id.* ¶ 64.

## II. RELEVANT BACKGROUND

### *A. Facts Alleged In The Amended Complaint.*[1]

On October 29, 2023, Plaintiff Nathan Vidal ("Vidal"), while shopping at a Publix grocery store, saw the Reese's Peanut Butter Pumpkins for sale and "believed that the product contained a cool looking carving of a pumpkin's mouth and eyes as pictured on the product packaging." *Id.* ¶ 11. Mr. Vidal alleges that, based on the depictions on the product packaging, he purchased multiple bags of Reese's Peanut Butter Pumpkins for approximately $8 per bag.

---

[1] The Court accepts the well-pleaded facts in the Second Amended Complaint as true for purposes of considering the Motion to Dismiss. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

*Id.* ¶ 12. Similarly, Plaintiff Eduardo Granados ("Granados") alleges that, on November 2, 2023, while shopping at a Publix grocery store, he "saw the Reese's Peanut Butter Pumpkins for sale and believed that the product contained a cool looking carving of a pumpkin's mouth and eyes as pictured on the product packaging." *Id.* ¶ 15. Relying on the depictions on the product packaging, Mr. Granados purchased a bag of the Peanut Butter Pumpkins for $2.65. *Id.* ¶ 16.

Both Plaintiffs claim that after they made their individual purchases, they were dissatisfied upon opening the product packaging. Both complain that the Reese's Peanut Butter Pumpkins they purchased "did not contain any of the artistic carvings of the mouth or eyes as pictured on the label and they were all blank." *Id.* ¶ 16. That is, although the products they received were shaped like pumpkins, as opposed to regular, round Reese's Peanut Butter cups, they did not have the carved designs Plaintiffs allegedly desired.

Mr. Vidal claims that had the depictions on the product packaging been "truthful" or "had he known the pieces were blank," he would "have paid less or not purchased" the Hershey's product at all. *Id.* ¶ 14. Like Mr. Vidal, Mr. Granados alleges that he would have paid less than $2.65 or not purchased the Reese's Peanut Butter Pumpkins had the depictions on the product packaging been "truthful" or "had he known the pieces were blank." *Id.* ¶ 18.

Both Plaintiffs further allege that they decided to purchase the Reese's Peanut Butter Pumpkins for the "novelty/party display value of the depicted faces, not merely for generic chocolate-and-peanut butter candy." *Id.* ¶ 20. And both Plaintiffs claim that they paid a price premium for the Reese's Peanut Butter Pumpkins and that they would have paid less or not

purchased the Reese's Pumpkins at all if they had known that the individual chocolate pieces did not contain the carvings depicted on the product packaging. *Id.* ¶¶ 22–27.

***B. Procedural History.***

Plaintiffs, Vidal and Granados,[2] initiated this proposed class action on May 17, 2025, against Hershey on behalf of themselves and a proposed class of consumers who purchased Reese's Peanut Butter Pumpkins in the State of Florida and were allegedly misled by certain depictions on the product packaging. *See generally* [ECF No. 1 ("Complaint")]. In the original Complaint, Plaintiffs asserted a single cause of action for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201. On September 19, 2025, this Court dismissed the Complaint on the grounds that Plaintiffs had failed to allege facts demonstrating a concrete injury and, therefore, that they lacked Article III standing to assert the claim for relief in the Complaint, either individually or on behalf of a purported class. *See generally* ECF No. 47 ("Order Granting First Motion to Dismiss"). After this Court granted leave to file an amended pleading, on December 4, 2025, Plaintiffs filed the First Amended Class Action Complaint, the operative pleading, which is now at issue. [ECF No. 60 ("Amended Complaint")].

In the Amended Complaint, Plaintiffs again claim that Hershey falsely represented that its Reese's Peanut Butter Pumpkins product had explicit carved-out artistic designs of a mouth and eyes on their surface when there are no such carved designs on the actual chocolate products. Am. Compl. ¶¶ 2–3.

[2] Two of the four Plaintiffs originally named in the Complaint, Debra Hennick and Abdjul Martin, voluntarily dismissed their claims against Hershey in this action. [ECF No. 40].

On January 8, 2026, Hershey filed the Motion to Dismiss now before this Court. [ECF No. 65 ("Motion")]. Hershey contends that Plaintiffs still lack Article III standing and that they again failed to adequately plead a claim under FDUTPA, and, therefore, that the Amended Complaint should be dismissed.

The Motion is fully briefed and ripe for adjudication.

## III. RELEVANT LEGAL STANDARDS

### *A. Rule 12(b)(1) – Lack of Standing*

Under Article III of the United States Constitution, federal courts may only decide "Cases" and "Controversies." U.S. Const. art. III, § 2. One element of the case-or-controversy requirement is that plaintiffs "must establish that they have standing to sue" in federal court. *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must allege that: (1) he or she has suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003) (citations omitted).

"[T]he party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Cone Corp. v. Fla. Dep't*

*of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)).

***B. Rule 12(b)(6) – Failure To State A Claim***

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 570. A plaintiff makes a facially plausible claim when she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted. In considering a Rule 12(b)(6) motion, the court's review is generally "limited to the four corners of the complaint."

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73).

## IV. DISCUSSION

Hershey seeks dismissal of the Amended Complaint based on a lack of standing and failure to state a claim. Because the issue of standing "is a threshold jurisdictional question[,]" this Court first addresses the parties' arguments regarding Article III standing. *Walters v. Fact AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023).

### *A. Standing.*

Hershey argues that Plaintiffs have not adequately alleged standing to sue on three grounds. First, Hershey contends that Plaintiffs have not satisfied their burden of demonstrating that they suffered an injury in fact because they received the benefit of their bargain. Mot. at 9. Second, Hershey argues that Plaintiffs' newly added "price premium" allegations are insufficient. *Id.* at 9–10. And, third, Hershey avers that any injury Plaintiffs

may have suffered was mooted by the fact that they could have gotten a full refund from Publix for their purchases of the Peanut Butter Pumpkins. *Id.* at 12.

According to Hershey, "[Plaintiffs'] putative class action fails because it involves no actual harm and seeks relief for nothing more than subjective feelings of disappointment due to a selective, unreasonable, and fanciful interpretation of a product's packaging." *Id*. at 3.

Plaintiffs respond that the Motion should be denied, arguing that they "have sufficiently pled Article III standing through a concrete price-premium injury and have stated a plausible claim under FDUTPA." Resp. at 5.

1. Injury In Fact.

Hershey challenges Plaintiffs' standing based on Plaintiffs' alleged failure to sufficiently plead an injury in fact. As set forth above, to establish standing, a plaintiff must allege that he or she has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Kelly*, 331 F.3d at 819–20. As the party invoking federal jurisdiction, Plaintiffs bear the burden of "alleging facts that plausibly demonstrate each element [of standing]," including, as relevant here, injury in fact. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (cleaned up); *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc.*, 386 F.3d at 1083.

In *Doss v. General Mills, Inc.*, the Eleventh Circuit explained that for purposes of Article III standing, "[e]conomic injuries are the 'epitome' of concrete injuries." 816 F. App'x 312, 314 (11th Cir. 2020) (citing *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019)). Thus, a plaintiff may establish standing based on an economic injury. The Eleventh Circuit and District Courts within this Circuit have recognized two theories on

which plaintiffs in a consumer deception case may satisfy the economic injury requirement: (1) the benefit-of-the-bargain theory, and (2) the price-premium-overcharge theory. Hershey argues that Plaintiffs have not alleged facts demonstrating that they were deprived of the benefit of their bargain or that they were injured based on a price premium overcharge. This Court therefore considers whether Plaintiffs have adequately alleged that they suffered an injury in fact under either theory.

2. Whether Plaintiffs Allege Facts Demonstrating That They Were Deprived Of The Benefit Of Their Bargain.

Hershey argues that Plaintiffs have not alleged facts demonstrating that they were deprived of the benefit of their bargain for the specific Reese's products they purchased.

A plaintiff may establish a concrete injury-in-fact under a benefit-of-the-bargain theory by showing that they paid for a product but received something of lesser value or that was completely worthless. *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019). Under this theory, the damages are the difference between the value of the product as it was advertised and the actual value of what the plaintiff received. *Id*.

In *Debernardis,* the plaintiffs purchased dietary supplements that contained an ingredient the FDA had deemed "unsafe", making the product illegal to sell under federal law. The plaintiffs sued the defendants under FDUTPA, alleging they had not received the benefit of their bargain because the products they purchased were not what they paid for – a healthy, unadulterated, legal supplement. *Id*. The defendants moved to dismiss on standing grounds arguing that because the plaintiffs, who did not allege that they suffered any negative effects from taking the supplements and did not claim that the supplements did not work, were not physically harmed by consuming the product, they got what they paid for. The

district court granted the defendants' motion and dismissed the complaint on grounds the plaintiffs lacked standing because they had not alleged a concrete injury as required for a FDUTPA claim. *Id.*

The Eleventh Circuit reversed, holding that the plaintiffs had sufficiently alleged a concrete injury because, as a result of the ban on sales of the supplements, the supplements had zero economic value. *Id.* at 1085. Therefore, the plaintiffs, who paid for and expected to receive a legal, safe product, were deprived of the benefit of their bargain when they instead received a legally valueless, unsafe product. *Id.*

Several years after its opinion in *Debernardis*, the Eleventh Circuit made it clear that its holding in that case regarding the benefit-of-the-bargain damages theory is limited. *See Marrache v. Bacardi, U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021). In *Marrache*, the plaintiff sued under FDUTPA after realizing that a gin product they purchased contained an ingredient known as "grains of paradise" which was not approved under Florida law. The district court dismissed the complaint on grounds that the plaintiffs' allegations failed to satisfy the damages element under FDUTPA. The Eleventh Circuit affirmed, explaining:

> [E]ven if the sale of Bombay containing grains of paradise is illegal under Florida law, Bombay certainly is not "worthless" in other states, as it is permitted to be sold under federal law and is thus not valueless under the benefit-of-the-bargain theory for actual damages under FDUTPA. Under Florida law, "[t]he members of [a] putative class who experienced no actual loss have no claim for damages under FDUTPA." *Rollins,* [*Inc. v. Butland*,] 951 So. 2d [860,] 873 [Fla. 2d DCA 2006)]. Indeed, FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." [*City First Mortg. Corp. v.*] *Barton*, 988 So. 2d [82,] 86 [Fla. 4th DCA 2008)] (quoting *Rollins*, 951 So. 2d at 873). Because FDUTPA requires an aggrieved person to suffer actual damages, we conclude that Marrache has not pled a plausible claim for actual damages under FDUTPA.

17 F.4th at 1101.

Although *Marrache* did not turn on the issue of standing, the court's analysis is instructive in the instant FDUTPA case. Like the plaintiffs in *Marrache*, Plaintiffs here have not alleged that the Reese's Peanut Butter Pumpkins they purchased were not edible or that they suffered any side effect, health issue, or harm from consuming the product. Nor have Plaintiffs alleged that the sale of the Peanut Butter Pumpkins was illegal. Thus, like the *Marrache* plaintiffs, Plaintiffs here have not alleged facts demonstrating that the products they purchased were completely worthless. Therefore, the products are not valueless under the benefit-of-the-bargain theory for actual damages under FDUTPA.

As this Court pointed out in the Order Granting Defendant's First Motion to Dismiss, numerous courts in the Southern District of Florida have addressed the benefit-of-the-bargain theory in consumer deception cases presenting circumstances analogous to those here and found that the claims were inadequate to satisfy the injury in fact requirement.

Specifically, in *Valiente v. Publix Supermarkets, Inc.*, the plaintiff purchased honey-lemon cough drops, apparently attracted by the phrase "honey-lemon," the "pictures of these ingredients," and the statement that the product "soothes sore throats." No. 22-22930-Civ-Scola, 2023 WL 3620538, at *1 (S. D. Fla. May 24, 2023) (Scola, J.). The plaintiff alleged that based on those representations, he believed that the cough drops contained lemon ingredients and were capable of soothing bronchial passages. *Id.* The product's front label, however, disclosed that the active ingredient was "Menthol Cough Suppressant/Oral Anesthetic," and the ingredient list did not include lemon. *Id.* The court ultimately held that the plaintiff failed to assert an economic injury because the plaintiff did not allege that the "honey-lemon cough

drops were defective, did not work as advertised, or otherwise were so flawed as to render them worthless." 2023 WL 3620538, at *5.

Similarly, in *Doss v. General Mills, Inc.*, the plaintiff asserted claims against General Mills based on General Mills' failure to disclose to consumers that its Original and Honey Nut Cheerios cereals contain glyphosate. No. 18-61924-CIV, 2019 WL 7946028, at *1 (S.D. Fla. June 14, 2019) (Scola, J.), *aff'd,* 816 F. App'x 312 (11th Cir. 2020). The court held that to the extent the plaintiff claimed that she did not receive the benefit of her bargain, her claim failed because even if the cereal she bought contained a significant amount of glyphosate, "there is no allegation that she did not receive, at a minimum, the product General Mills said it was offering: a 'gluten free' cereal 'packed with nutrients,' made of oats which are 'proven to help lower cholesterol,' containing only one gram of sugar, and the ingredients of which also include 'corn starch, . . . salt, tripotassium phosphate, and [v]itamin E.'" *Id.* at *2. In other words, the product was not completely worthless, and the plaintiff received the benefit of her bargain. *Id.* (citing *In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (finding no injury in fact where the "[p]laintiffs paid for fruit juice, . . . received fruit juice, which they consumed without suffering harm," and the juice has "not been recalled, ha[s] not caused any reported injuries, . . . do[es] not fail to comply with any federal standards, [and had] no diminished value due to the presence of the lead").

And, in *Melancon v. Alpha Prime Supps LLC*, the plaintiffs claimed that they were misled by the defendants' advertising on packaged brownies that the brownies contained 19 grams of protein per serving when, in fact, they contained less protein than that. The district court dismissed the putative class action complaint on grounds, *inter alia*, the plaintiffs failed to allege an injury in fact under the benefit-of-the-bargain theory, noting "[p]laintiffs fail to

indicate that the Products are defective, do not work as advertised, or otherwise are so flawed as to render them worthless." No. 24-CV-61135, 2025 WL 375903, at *3 (S.D. Fla. Jan. 13, 2025) (Martinez, J.), *appeal dismissed sub nom. Melancon v. Alpha Prime Supps*, No. 25-10319-TT, 2025 WL 2155863 (11th Cir. June 11, 2025).

Finding the analyses in the above-discussed cases instructive, this Court dismissed Plaintiffs' original Complaint on grounds they had not sufficiently alleged a concrete injury under the benefit-of-bargain-theory. This Court observed that Plaintiffs "fail[ed] to allege that the Reese's Products they purchased were defective or worthless," and that they "[did] not allege that the products were unfit for consumption, did not taste as Plaintiffs expected, or otherwise were so flawed as to render them worthless." *See* Order Granting First Motion To Dismiss at 14. In rejecting Plaintiffs' benefit-of-the-bargain allegations in the original Complaint, this Court explained: "Plaintiffs' conclusory allegations as to why they have allegedly been deprived of the benefit of the bargain all boil down to their subjective, personal expectations of how the products would or should have looked when unpackaged. This is not enough to plausibly allege a concrete injury for purposes of Article III standing." *Id.* at 14–15.

With the benefit of this Court's analysis in the Order Granting the First Motion to Dismiss, Plaintiffs filed the Amended Complaint and again claim that they did not receive the benefit of their bargain. In the Amended Complaint, Plaintiffs add new allegations regarding their subjective beliefs and expectations. That is, they now allege that they purchased the products at issue "for the novelty/party-display value of the depicted faces, not merely for generic chocolate-and-peanut-butter candy." Am. Comp. ¶ 20. In an apparent attempt to plead around the benefit-of-the-bargain decisions discussed above, Plaintiffs now

claim that they did not bargain for chocolate-peanut butter candy, no matter how non-defective and fit for consumption such candy may have been. Rather, they now claim that the reason they purchased the products was for the novelty value, and, thus, by not receiving products with "cool, carved designs," they did not get what they bargained for. That new conclusory allegation does not get them past the goal line.

Again, and perhaps even more so now, accepting Plaintiffs' allegations as true, it is clear that their only injury is their subjective disappointment. Even if they had some such novelty expectations when buying these products, Plaintiffs do not allege that the Hershey's Reese's Peanut Butter Pumpkins that they purchased were defective[3] or worthless or that they lost *all* economic value because of the absence of the decorative carvings.[4] And, similar to

[3] In their Response to the Motion to Dismiss, Plaintiffs briefly argue that they did not receive the benefit of the bargain based on taste. Resp. at 12–13 Specifically, Plaintiffs point out that during his deposition, Plaintiff Vidal testified that he does not prefer the Reese's Pumpkins because they have "too much on the chocolate side," and, therefore, he did not get the "benefit" of a superior taste. However, this was not alleged in the Amended Complaint, and as the Eleventh Circuit has "repeatedly [ ] held" "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *see also Tsavaris v. Pfizer, Inc.*, No. 1:15-cv-21826-KMM, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

[4] *Compare, e.g.*, *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276 (S.D. Fla. 2022) (Altman, J.) (plaintiffs sufficiently alleged injury-in-fact where defendants had specifically touted pressure cookers' safety features, but because of defects in the cookers' lids, those representations were false and misleading and plaintiffs lost out on the benefit of their bargain); *Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1354 (S.D. Fla. 2021) (Singhal, J.) (where a putative class of car buyers claimed that a manufacturer sold and leased cars equipped with defective active head restraint ("AHR") systems in headrests, court held that the complaint's "allegations that the latent defect in the AHR deprived them of the benefit of the bargain meets the injury-in-fact requirement under Eleventh Circuit law" (citing *Debernardis*, 942 F.3d at 1076)).

how the active ingredient in *Valiente* was disclosed on the packaging of the defendant's product, Plaintiffs include a photograph of the Peanut Butter Pumpkin packaging which does show the disclaimer – "DECORATING SUGGESTION" – next to the image of the carved chocolate pumpkin. Am. Comp. at 2. What's more, Plaintiffs include a photograph of what they actually received, and while the product may not have the "cool looking carving of a pumpkin's mouth and eyes," it does have a novel pumpkin shape. *Id*. at 3.

At bottom, Plaintiffs have not alleged sufficient facts to show that they were deprived of the benefit of their bargain when they purchased the Reese's Peanut Butter Pumpkins. Therefore, like the original Complaint, Plaintiffs have again failed to allege a concrete injury under a benefit-of-the-bargain theory.

3. <u>Price Premium Theory.</u>

Plaintiffs also added "price-premium overcharge" allegations in the Amended Complaint. Am Compl. ¶¶ 22–27. Hershey argues that the price premium allegations are insufficient to establish Article III standing. This Court agrees.

Under a price premium theory, a plaintiff may establish standing by showing that as a result of a company's false advertising or deceptive labeling, the plaintiff paid more for the product than they otherwise would have. In other words, plaintiffs proceeding under this theory of economic injury show that they paid a "price premium" based on the false advertising over the market value of the product they actually received.

As the Eleventh Circuit stated in *Debernardis*, a plaintiff's damages are typically measured by the difference between the actual value of the product and its inflated, artificial value as a result of the misrepresentation. 942 F.3d at 1084. This coincides with FDUTPA's requirement that a plaintiff establish "three objective elements: (1) a deceptive act or unfair

practice; (2) causation; and (3) actual damages." *Carriuolo v. General Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). The theory centers on the principal that payment of an allegedly unauthorized premium constitutes an economic injury. Therefore, in order to establish standing under this theory, Plaintiffs must plausibly allege, based on non-conclusory facts, that they were injured by paying an inflated price for the Reese's Peanut Butter Pumpkins as a result of the allegedly misleading packaging and that the price they paid was greater than the market value of the product they actually received.

In this Court's prior Order Granting First Motion to Dismiss, the undersigned found that Plaintiffs' original Complaint "contains no factual allegations regarding the price they might have paid for the Reese's Products if they had not been marketed with the decorative artistic designs on the packaging." Order Granting First Motion to Dismiss at 15.

In an effort to remedy the shortcoming identified in the prior Order, Plaintiffs include specific allegations in the Amended Complaint to support their price premium theory. Some of Plaintiffs' new allegations focus on their subjective claim that they would have paid less for the Reese's Pumpkins had they known of the misrepresentation – that is, that the Reese's Pumpkins they purchased did not have the carved designs shown on the product packaging. For example, in paragraphs 14 and 18, each Plaintiff alleges: "Had the front-panel depictions been truthful (or had he known the pieces were blank), Mr. Vidal [and Mr. Granados] would have paid less or not purchased" the Reese's Pumpkins. However, in order to properly allege an economic injury under the price premium theory, Plaintiffs must plausibly allege that the Reese's Pumpkins they received were actually worth less than what they each paid, not just that they believe they should be worth less.

In an effort to fill that gap, Plaintiffs include a series of allegations in the Amended Complaint to show that "[i]n retail commerce, Reese's Peanut Butter Pumpkins are priced higher per ounce than regular Reese's Peanut Butter Cups across mainstream retailers and the manufacturer's website. That same-brand differential is concrete, measurable, and material." Am. Comp. ¶ 22. The Amended Complaint goes on to allege specific facts showing that at Target and Walmart and on Hershey's online store, Reese's Peanut Butter Pumpkins are sold for about a 20.4% to 25% higher price per ounce than regular Reese's Peanut Butter Cups. Am. Comp. ¶¶ 23–25. Plaintiffs further allege that "these representative market snapshots show that the Reese's Peanut Butter Pumpkins systematically commands a material same-brand per-ounce premium over regular Reese's Peanut Butter Cups at major retailers and directly from the manufacturer." *Id.* ¶ 26. Plaintiffs then allege that their actual damages are "the price-premium overcharge, measured as the per-ounce differential between Reese's Peanut Butter Pumpkins and regular Reese's Peanut Butter Cups, applied to the price actually paid." *Id.* ¶ 27.

Accepting Plaintiffs' allegations as true, then, Target, Walmart, and Hershey's charge a premium for Reese's Peanut Butter Pumpkins over what they charge for regular Reese's Peanut Butter Cups. There are a couple obvious problems with these allegations insofar as showing that Plaintiffs were injured by paying a price premium for Reese's Peanut Butter Pumpkins.

First, and perhaps most obvious, Plaintiffs did not purchase their products at Target, Walmart, or on Hershey's online store. They purchased their products at Publix. *See* Am. Comp. ¶¶ 11, 15. Although they include allegations regarding what they paid for the products they purchased at Publix, they do not include allegations anywhere in the Amended

Complaint regarding the price differential between the premium Reese's Peanut Butter products they purchased and other Reese's Peanut Butter products at Publix. That, of course, begs the question whether they actually paid a price premium when they purchased their Reese's Peanut Butter Pumpkins from Publix, because they do not allege that they did.

Second, even accepting as true, based on Plaintiffs' research regarding other retailers, that Publix charges more for Reese's Peanut Butter Pumpkins than it does for plain Reese's Peanut Butter Cups, that does not show that Plaintiffs suffered an economic injury. Plaintiffs do not allege that they paid the higher price for the Reese's Peanut Butter Pumpkins but instead received plain Reese's Peanut Butter Cups. To the contrary, Plaintiffs paid for Reese's Peanut Butter Pumpkins, and Plaintiffs received Reese's Peanut Butter Pumpkins that were actually shaped like pumpkins. The relevant differential, then, would be what they would be willing to pay for Reese's Peanut Butter Pumpkins with carved out designs on their surface *vis a vis* Reese's Peanut Butter Pumpkins without those carved designs, which is what they actually received. This, Plaintiffs do not say.

Again, Judge Scola's analysis in *Valiente* is instructive. In *Valiente*, the plaintiff alleged that the product label's "false and misleading representations" allowed Publix to sell the product at a "premium price" which was "higher than it would be sold for absent the misleading representations and omissions." 2023 WL 3620538, at *1. The court found the plaintiff's price premium allegations insufficient and explained:

> [] Valiente does not allege any facts by which one might measure the difference between the "premium price" he claims to have paid and the cough drops' fair market price. That is, he fails to tie any aspect of the product's label to the supposedly "premium price" of "$1.79." He does not allege, for instance, that cough drops without images of lemons sell for less than those with such images, and he does not compare the price of Publix's lemon cough-drops to products with similar ingredients but "non-misleading" packaging. Valiente does not

> even specifically allege that cough drops containing a non-*de minimis* amount of lemon have a higher fair market price. Instead, he provides only *general* allegations that consumers like himself may understand Publix's representations in a way that allow it to sell the cough drops at a premium price.

*Id*. at *5.

Like the plaintiff's allegations in *Valiente*, Plaintiffs' allegations in the Amended Complaint fail to "effectively tie [Plaintiffs'] alleged economic injury to the [Reese's Peanut Butter Pumpkins'] deceptive and misleading aspects." *Id.* at *4. Plaintiffs' comparison of two different types of Reese's products (*i.e.*, Peanut Butter Pumpkins versus Peanut Butter Cups) sold in different package sizes and with different package labeling are not enough to plausibly suggest an existing "difference between the 'price premium' [Plaintiffs] claim[ ] to have paid and the [Reese's Peanut Butter Pumpkins] fair market price." *Id.* at *5. Plaintiffs fail to allege the actual value of the Reese's Peanut Butter Pumpkins without the decorative carvings, much less compare the price of Reese's Peanut Butter Pumpkins to competing products *without* the allegedly misleading packaging (like, for instance, Ghirardelli's Milk Chocolate Jack O' Lanterns).[5] *See Melancon*, 2025 WL 375903, at *3 (finding lack of standing where conclusory price premium allegations are not supported by facts, such as facts about competing products with similar characteristics that would allow the court to plausibly conclude an economic injury occurred due to the complained-of label statements).

---

[5] Ghirardelli's Milk Chocolate Jack O' Lanterns are shaped like a stacked pumpkin with *real* carved designs of a mouth, nose, and eyes etched into each chocolate piece. *See* Bailey Fink, *A First-Of-Its-Kind Ghirardelli Candy Is Hitting Shelves Now*, Allrecipes (Sept. 26, 2025), https://www.allrecipes.com/ghirardelli-new-jack-o-lanterns-11815514 (last visited Sept. 15, 2026).

In short, the factual allegations in Plaintiffs' Amended Complaint simply fail to tie any aspect of Hershey's allegedly deceptive packaging to the purported price premium that each Plaintiff paid for the Reese's Peanut Butter Pumpkins they received. Stated differently, the Amended Complaint contains no factual allegations regarding the price Plaintiffs might have paid for the Reese's Peanut Butter Pumpkins they received if they had not been marketed with the decorative artistic designs on the packaging.[6]

Like the original Complaint, Plaintiffs' Amended Complaint contains nothing more than allegations of Plaintiffs' subjective belief that they paid a price premium for the Reese's Peanut Butter Pumpkins. However, "mere allegations of having paid a price premium are insufficient." *Gyani v. lululemon athletica inc.*, No. 24-CV-22651, 2025 WL 548405, at *4–5 (S.D. Fla. Feb. 19, 2025) (Bloom, J.) (dismissing complaint for lack of standing because the plaintiffs' blanket allegations that they paid a price premium fail to tie any aspect of Lululemon's statements to the purported price premium that the plaintiffs paid for Lululemon's products). A plaintiff must tie the value of the product to any purported misrepresentation, and Plaintiffs have not done so here. Therefore, this Court finds that Plaintiffs have failed to set forth sufficient allegations to demonstrate a concrete injury under a price premium theory.

---

[6] As the *Valiente* court observed, to show damages under the price premium theory, a plaintiff needed to demonstrate the hypothetical price at which the product would sell if not for the purportedly misleading advertisements. However, a determination of such hypothetical price is too speculative to be an "actual injury" under Article III. *Valiente*, 2023 WL 3620538, at *5; *see also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) (Jordan, J.) ("[T]o show any damages under the "price inflation" theory . . . would require evidence of the hypothetical price at which [product] would sell if not for the allegedly misleading advertisements. Determination of such *hypothetical* price, even with expert proof, is too speculative to be the premise of an "actual injury" under Article III.").

In sum, accepting all of Plaintiffs' allegations in the Amended Complaint as true and viewing those allegations in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have again failed to allege sufficient facts demonstrating a concrete injury under either a benefit-of-the-bargain theory or a price-premium-overcharge theory. Therefore, Plaintiffs have not satisfied their burden of demonstrating that they have Article III standing to assert the claim for relief in the Amended Complaint, either individually or on behalf of a purported class.

4. Whether Plaintiffs' Alleged Economic Injuries Are Moot.

Hershey also argues that Plaintiffs lack standing because their claimed economic injuries are mooted by Plaintiffs' failure to accept a full refund of their purchase price pursuant to Publix policy. Mot. at 12. Because this Court has already determined that Plaintiffs have not alleged sufficient facts to demonstrate that they have an economic injury as needed for Article III standing, this Court need not reach the issue of whether their alleged economic injuries are moot.

***B. Hershey's Other Grounds For Dismissal.***

Because the undersigned has concluded that Plaintiffs do not adequately plead standing, this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (citation omitted)). Therefore, this Court does not have jurisdiction to and will not address Hershey's additional grounds for dismissal regarding Plaintiffs' failure to state a

FDUTPA claim and Hershey's challenges to the class action allegations in the Amended Complaint.

## V. CONCLUSION

Accordingly, based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss **[ECF No. 65]** is **GRANTED**.
2. Plaintiffs' First Amended Class Action Complaint [ECF No. 60] is **DISMISSED WITHOUT PREJUDICE**.[7]
3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida this 16th day of September, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

[7] *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Syst., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.").